## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PAUL GUERTIN,             )
                            )
                            )
          Plaintiff,       )
                            )
      v.                  )      Civil Action No. 24-1755 (RBW)
                            )
UNITED STATES OF AMERICA,    )
                            )
         Defendant.      )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Paul Guertin, brings this civil action against the defendant, the United

States of America, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680,

alleging various acts of tortious conduct by Special Agent Robin Leipfert, an agent with the

United States Department of State's Office of Inspector General ("OIG"), and her supervisors,

that allegedly caused him reputational harm, emotional distress, and the loss of his career.  <u>See</u>

First Amended Complaint ("Am. Compl.") ¶¶ 1, 4–6, ECF No. 24.  Currently pending before the

Court is the defendant's motion to dismiss, <u>see</u> Defendant's Motion to Dismiss Amended

Complaint ("Def.'s Mot."), ECF No. 28, which the plaintiff opposes, <u>see</u> Plaintiff's Response in

Opposition to Defendant's Motion to Dismiss Amended Complaint ("Pl.'s Opp'n"), ECF No. 29.

Upon careful consideration of the parties' submissions,[1] the Court concludes for the following

reasons that it must grant the defendant's motion to dismiss.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the Memorandum in Support of Defendant's Motion to Dismiss Amended Complaint ("Def.'s Mem."),
ECF No. 28-1; (2) the Memorandum in Support of Plaintiff's Response in Opposition to Defendant's Motion to
Dismiss Amended Complaint ("Pl.'s Mem."), ECF No. 29-1; and (3) the Reply in Support of Defendant's Motion to
Dismiss Amended Complaint ("Def.'s Reply"), ECF No. 30.

# I.    BACKGROUND

## A.    Factual Background

The following factual allegations are accepted as true for purposes of resolving the motion to dismiss and are derived from the plaintiff's Amended Complaint unless otherwise specified.  The plaintiff "beg[an] his diplomatic career at the State Department in 2007, where he was employed as a Foreign Service Officer for over ten years," Am. Compl. ¶ 8, until his resignation in August 2017.  See id. ¶ 24.  During his tenure, he held multiple overseas and domestic assignments, including as "a Consular Officer in Shanghai, [China,]" id. ¶ 9, "an Economic Officer at the U.S. Embassy in Islamabad, Pakistan," id. ¶ 11, "a Special Assistant in the Bureau of Intelligence and Research ("INR") in Washington, D.C.," id. ¶ 12, and a "Political Unit Chief at the U.S. Consulate General in Chengdu, China," id. ¶ 15.

"As a condition of joining the State Department as a Foreign Service Officer, [the plaintiff] applied for and maintained a Top Secret security clearance[,]" which "included [the] complet[ion of] a background investigation questionnaire on Standard Form 86 ('SF-86')" on multiple occasions.  Id. ¶ 18.  The SF-86:

> requires an applicant to disclose background information about both the applicant and the applicant's contacts[,] . . . [and] with respect to foreign contacts, the SF-86 requires an applicant to disclose the name of (and certain other details pertaining to) any foreign national with whom the applicant has had close or continuing contact within the preceding seven years and with whom the applicant . . . is bound by affection, influence, common interests, or obligation.

Id. ¶ 19.  The SF-86 "also requires an applicant to disclose such other information as psychological and emotional conditions, drug and alcohol use, criminal conduct, and financial records."  Id. ¶ 21.  "In his [April 3,] 2016 SF-86 [the ("2016 SF-86")], consistent with these disclosure obligations, [the plaintiff] . . . disclosed that his foreign contacts included a 'professional or business' relationship with two Chinese nationals (the 'Tenants') who rented a

bedroom in his house in Washington, D.C." Id. ¶ 20. He also responded "no[]" to "[o]ne of the financial-records questions ask[ing] whether [he] had ever experienced financial problems due to gambling." Id. ¶ 21.

"On February 3, 2016, Agent Leipfert was assigned to [the plaintiff's] case[,]" id. ¶ 28, which had been initiated "prior to the commencement of Agent Leipfert's employment[,]" id. ¶ 26. The case had been initiated by the OIG after it "received a tip from the FBI purportedly stating that [the plaintiff] had engaged in overseas transactions related to online gambling and to non-gambling sports competitions." Id. The plaintiff contends that Agent Leipfert soon "assumed unsupervised responsibility for investigating [his] conduct as a Foreign Service Officer[,]" id. ¶ 28, or alternatively, that senior OIG officials "failed to exercise reasonable care in supervising Agent Leipfert's investigation[,]" id. ¶¶ 29–32.

On March 11, 2016, the Assistant United States Attorney assigned to the plaintiff's case "issued subpoenas for all of [the plaintiff's] financial and tax records[,]" and later obtained a sealed order for "Google to release non-content metadata from [his] Google accounts, including his Gmail [account]." Id. ¶ 33. Then, on May 3, 2016, "Special Agents . . . with OIG[] went to the [plaintiff's] Washington, D.C., home [] while [he] was stationed in Taipei[, Taiwan,] . . . collected [his] trash that had been set out for collection[,] and [] transported the trash to another location for further investigation." Id. ¶ 34; cf. id. ¶ 15. That search, according to the plaintiff, "revealed various receipts and mail-related items" that allegedly corroborated his 2016 SF-86 disclosures. Id. ¶¶ 34–35.

On May 31, 2016, the plaintiff "spoke with a contract background investigator concerning his 2016 SF-86[,]" id. ¶ 22, and "[i]n June 2017, . . . [the plaintiff] was told that his security clearance had been suspended on an interim basis, pending the results of an

investigation[,]" id. ¶ 23.  The plaintiff alleges that Special Agent Meghan Leipfert, a special

agent with the OIG, id. ¶ 3, "had directly requested the suspension of his security clearance[,]"

id. ¶ 23.

The following year, on November 8, 2016, id. ¶ 36, and then again on December 8, 2017,

id. ¶ 41, "Agent Leipfert submitted [] sworn affidavit[s] . . . in support of [] application[s] for []

search warrant[s] to obtain from Google[,]" id. ¶ 36, and "Microsoft[,] all emails, chat

conversations, and account information associated with [the plaintiff's] [] account[s,]" id. ¶ 41.

The plaintiff alleges that both affidavits contained knowingly "false statements and material

omissions that were essential to the appearance of probable cause[,]" id. ¶¶ 39, 44, "that without

which a [] Judge would not have had a legal basis to issue the warrant[s]," id.  Central to both

affidavits was a "December 14, 2008, email from [the plaintiff's] Gmail address to his State

Department email address that listed three Chinese nationals' names and birthdates."  Id. ¶ 46.

"Agent Leipfert stated that [the plaintiff] was 'the adjudicating official in all three cases[,]'" id.,

and "that there was 'no known legitimate explanation for why [he] would have stored personal

information about these visa applicants whose applications he adjudicated,'" id. ¶ 53.

The plaintiff alleges that these sworn statements were "false for multiple reasons."[2]  Id.

For example, "[in] one of the cases . . . Agent Leipfert stated that . . . the plaintiff [] 'issued a

visa' to [an] applicant with a comment to disregard the previous adjudicating officer's notes"—

which had "initially denied [the applicant] as an intending immigrant"— and therefore the

---

[2] The plaintiff makes several additional allegations, including that Agent Leipfert (1) "stated, falsely, that [his] contacts with a handful of visa applicants constituted evidence of visa fraud and bribery[,]" Am. Compl. ¶ 58; (2) mischaracterized a personal loan as a "business arrangement" he failed to disclose, id. ¶¶ 60–61; (3) falsely claimed that he "solicit[ed] payments from aliens in exchange for facilitating visa applications[,]" id. ¶ 57; (3) and alleged that he used email accounts "to organize large-scale gambling pools . . . and to facilitate the transfer of at least $200,000 on behalf of himself and others in connection with these activities[,]" id. ¶ 65, despite knowing the pools involved only "token entry fee[s]" and that he "took no 'house fee' or profit[,]" id. ¶ 66.  The plaintiff also alleges further mischaracterizations of his visa adjudication history.  See id. ¶¶ 72–76.

plaintiff's "favorable adjudication of that visa [was] questionable, which indicates a likelihood of improper or fraudulent influence[.]" Id. ¶ 47.  The plaintiff alleges, however, that he "was <u>not</u> the adjudicating officer in [that] case," and that the applicant "never even received a visa[,]" <u>id.</u>, facts which Agent Leipfert allegedly "knew" because "'she searched th[e] name[] in [the Consolidated Consular Database[3],]'" <u>id.</u> ¶ 48.  As to another applicant whose name appears in the December 14, 2008, email, <u>see</u> <u>id.</u> ¶ 46, the plaintiff contends that Agent Leipfert omitted material records "[she] specifically reviewed in preparation for drafting her search warrant affidavits[,]" <u>id.</u> ¶ 52, which showed that "[the plaintiff] sent himself the [] [a]pplicant's name in order to facilitate subsequent diligence pertaining to the adjudication of that visa," <u>id.</u> ¶ 53.

On March 15, 2021, Special Agent Leipfert appeared as the "government's sole witness before the grand jury[.]" <u>Id.</u> ¶ 86.  The plaintiff alleges that she "knowingly presented highly misleading, perjured, and inflammatory testimony . . . while omitting highly material information known to her that was necessary to prevent her testimony from being misleading." <u>Id.</u> Specifically, he claims that Agent Leipfert falsely testified that he:  (1) served as an INR "desk officer" with prolonged access to "very highly sensitive information related to foreign policy[,]" <u>id.</u> ¶ 89; (2) "shar[ed] a lot of . . . sensitive information with people that had no right to know[,]" <u>id.</u> ¶ 90; (3) experienced "financial problems due to gambling during his tenure at the State Department[,]" <u>id.</u> ¶ 87; and (4) sent his former romantic partner, a Chinese national, "very disgusting [sexual] things that you would not want to see and hear[,]" <u>id.</u> ¶¶ 87, 101, in addition to other false testimony.  <u>See generally</u> <u>id.</u> ¶¶ 85–103.

On March 29, 2021, the grand jury indicted the plaintiff on one count of wire fraud pursuant to 18 U.S.C. § 1343 and one count of obstruction of an official proceeding in violation

---

[3] The plaintiff has explained that the Consolidated Consular Database ("CCD") "is the State Department's repository of visa and passport records[.]" <u>Id.</u> ¶ 46.

of 18 U.S.C. § 1512(c)(2).  Id. ¶ 104.  The plaintiff contends that Agent Leipfert's "testimony infected the grand jury with virtually every form of prejudice, from false statements about the key questions, to material omissions about the key questions, to highly inflammatory allegations of breaching national security, to completely irrelevant and baseless insinuations of sexual perversion," id. ¶ 103, that ultimately "contributed to its decision to indict [him]."  Id. ¶ 88.

During a subsequent criminal proceeding, the plaintiff moved to suppress the evidence obtained through what he claims was an "unconstitutional search" of his personal email accounts and requested a Franks[4] hearing.  Another member of this court denied both of the plaintiff's requests, finding, inter alia, that "probable cause supported the search warrant affidavits."  Id. ¶ 111 (citing United States v. Guertin, 21-cr-262 (TNM), Transcript of Motion Hearing (Dec. 15, 2021) ("Hr'g Tr.") at 11:4–5, ECF No. 40); see also Guertin, 21-cr-262 (TNM), Hr'g Tr. at 9:15–20 (concluding there was probable cause "even after excising the disputed facts").  He also moved to dismiss the indictment on the grounds that (1) it failed to state an offense and (2) there was alleged prosecutorial misconduct in the grand jury proceedings, specifically Agent Leipfert's "false, misleading, and prejudicial testimony[.]"  Am. Compl. ¶ 112.

On January 24, 2022, the same other member of this Court dismissed both counts of the indictment that had been issued against the plaintiff on the ground that the indictment failed to state an offense and declined to reach the prosecutorial misconduct claim.  See id. ¶¶ 112–14; United States v. Guertin, 581 F. Supp. 3d 90, 101–02 (D.D.C. 2022).  The government appealed the dismissal of the wire fraud count, and the plaintiff cross-appealed the denial of his

---

[4] Franks v. Delaware, 438 U.S. 154 (1978).  The purpose of a Franks "hearing [is] to determine the truth of the affidavit underlying the issuance of the warrant only where 'the magistrate or judge, in issuing a warrant, was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'"  United States v. Matthews, 753 F.3d 1321, 1326 (D.C. Cir. 2014) (quoting United States v. Leon, 468 U.S. 897, 923 (1984)).

suppression motion.  <u>See</u> <u>Am. Compl.</u> ¶ 114.  On May 16, 2023, the D.C. Circuit unanimously affirmed the dismissal of the indictment and declined to review the denial of plaintiff's suppression motion.  <u>See</u> <u>id.</u>; <u>United States v. Guertin</u>, 67 F.4th 445, 454 (D.C. Cir. 2023).  The plaintiff then filed an administrative claim with the State Department seeking damages for, among other things, "lost income, lost benefits, loss of future potential earnings, . . . and personal injury (pain, suffering, and emotional distress)[,]" which remains unresolved as of the date the plaintiff filed his Amended Complaint.  <u>Id.</u> ¶ 115.

**B.    Procedural Background**

On January 9, 2024, the plaintiff filed his Complaint in the United States District Court for the District of Arizona.  <u>See</u> Complaint, ECF No. 1.  The case was transferred to this Court on June 18, 2024, <u>see</u> Minute Entry (June 18, 2024), ECF No. 17, and assigned to the undersigned on July 2, 2024.  <u>See</u> Minute Entry (July 2, 2024), ECF No. 21.  On August 20, 2024, the plaintiff filed his Amended Complaint, asserting five claims:  (Count I) malicious prosecution, <u>see</u> <u>id.</u> ¶¶ 120–32; (Count II) invasion of privacy: intrusion upon seclusion, public disclosure of private facts, and false light, <u>see</u> <u>id.</u> ¶¶ 133–45; (Count III) abuse of process, <u>see</u> <u>id.</u> ¶¶ 146–56; (Count IV) intentional infliction of emotional distress, <u>see</u> <u>id.</u> ¶¶ 157–65; and (Count V) negligent supervision, <u>see</u> <u>id.</u> ¶¶ 166–82, asserting that, but for Agent Leipfert's "unconstitutional and unlawful statements and material omissions," <u>id.</u> ¶ 117, and the government's "breach of the duty to supervise [her]," <u>id.</u> ¶ 178, "[he] would never have been prosecuted[,]" <u>id.</u> ¶ 117, "the indictment would never have issued[,]" <u>id.</u> ¶ 109, and he "would have continued to progress through the ranks at the State Department[,]" <u>id.</u> ¶ 119.  On September 19, 2024, the defendant filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  <u>See</u> Def.'s Mot. at 1.  The plaintiff then filed his opposition on

October 17, 2024, see Pl.'s Opp'n at 1, to which the defendant filed a reply on November 7, 2024, see Def.'s Reply at 1.

## II.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed.

Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d

970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6)

motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in

original) (citation and internal quotation marks omitted).  And, the Court "need not accept bare

legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n,

No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v.

Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests whether a complaint has properly "state[d] a

claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to

dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S.

at 556).  Assessing plausibility is ultimately a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." Id. at 679.

In evaluating a motion to dismiss under Rule 12(b)(6), "[t]he complaint must be 'liberally

construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)

(quoting Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)).  While "a court must accept as true

all of the allegations contained in a complaint[,] . . . [t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level[,]'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Twombly, 550 U.S. at 555), and "the Court need not accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint," id. (citing Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The defendant argues that the plaintiff's claims should be dismissed for several reasons. First, the defendant argues that the Court "lacks jurisdiction over the [plaintiff's] false light claim, other invasion-of-privacy claims, the intentional infliction of emotional distress claim, and the negligent supervision claim based on" the "misrepresentation" exception to the FTCA, 28 U.S.C. § 2680(h). Def.'s Mem. at 13 (capitalization removed). Because the "conduct underlying these claims concerns either alleged misstatements in affidavits supporting warrant applications or in grand jury testimony[,]" the defendant argues, the "FTCA's waiver of sovereign immunity does not extend to [the plaintiff's] claims" that "arise from alleged misrepresentations." Id. at 14. The plaintiff responds that the "misrepresentation exception to the FTCA is inapplicable[,]" Pl.'s Mem. at 23, because it only applies "when the action itself falls within the commonly understood definition of a misrepresentation claim" akin to "the common law action

of deceit," involving "the invasion of interests of a financial or commercial character, in the course of business dealings."  Id.[5]

Finally, the defendant moves to dismiss all of the plaintiff's tort claims under Rule 12(b)(6) as insufficiently pleaded.  See Def.'s Mem. at 20–42; Def.'s Reply at 6–20.  The Court addresses the parties' arguments in turn.

**A.    Whether the Court Has Subject-Matter Jurisdiction over the Plaintiff's Federal Tort Claims Act Claims**

The Court first assesses whether it has jurisdiction over Counts II[6], IV[7], and V[8] of the Complaint.  "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  United States v. Testan, 424 U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Waivers of sovereign immunity must be "strictly construed, in terms of [their] scope, in favor of the sovereign."  Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  "When determining whether one of the exceptions to th[e] waiver [of sovereign immunity] applies, the court 'is to identify those circumstances which are within the

---

[5] The defendant also contends that "the Court [] lacks jurisdiction over [the plaintiff's] negligent supervision claim" under the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a), because it is predicated on discretionary decisions—namely the OIG's supervision of its employees.  See Def.'s Mem. at 16, 18–19.  The plaintiff in turn responds that a "policy . . . specifically required Agent Leipfert's supervisors to 'conduct periodic case reviews to ensure that cases are progressing in an efficient, effective, thorough, and legal manner,'" Pl.'s Mem at 24 (quoting Am. Compl. ¶ 175), and therefore her supervisors had "no discretion to permit [her] to conduct her investigation of [the] [p]laintiff either unsupervised or without the kind of case review that would be required" under the policy.  Id.  Because the discretionary-function exception applies only where "an action [is] 'a matter of choice for the employee' rather than one that a law or policy specifically prescribes[,]" the plaintiff argues that the exception "cannot apply" here.  Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

[6] Invasion of Privacy: Intrusion Upon Seclusion, Public Disclosure of Private Facts, and False Light.

[7] Intentional Infliction of Emotional Distress.

[8] Negligent Supervision.

words and reason of the exception—no less and no more.'"  Gross v. United States, 771 F.3d 10,

12 (D.C. Cir. 2014) (quoting Dolan v. U.S. Postal Serv., 546 U.S. 481, 492 (2006)).

The plaintiff's claims rely on the "limited waiver of sovereign immunity" contained in

the FTCA, United States v. Orleans, 425 U.S. 807, 813 (1976), and the "extent of th[at]

waiver . . . is coextensive with the district court's subject-matter jurisdiction to hear the case[,]"

Hornbeck Offshore Transp., LLC v. United States, 569 F.3d 506, 512 (D.C. Cir. 2009).  "Where

a claim falls within one of the enumerated exceptions to the FTCA's waiver of sovereign

immunity, this Court has no subject[-]matter jurisdiction."  James v. United States, 48 F. Supp.

3d 58, 64 (D.D.C. 2014).

"The FTCA allows those injured by federal employees to sue the United States for

damages[,]" Martin v. United States, 605 U.S. 395, 400 (2025), by waiving the sovereign

immunity of the federal government and "grant[ing] federal district courts jurisdiction over

claims arising from certain torts committed by federal employees in the scope of their

employment," Sloan v. U.S. Dep't of Hous. & Urban Dev., 236 F.3d 756, 759 (D.C. Cir. 2001)

(citing 28 U.S.C. §§ 1346(b), 2674).  But that waiver is subject to several statutory exceptions,

with "two in particular—the discretionary-function exception and the intentional-tort

exception—sometimes com[ing] into play" in a law enforcement misconduct "suit like this

one[.]"  Martin, 605 U.S. at 400–01.  First, the intentional-tort exception, bars "[a]ny claim

arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, misrepresentation, deceit, or interference with contract rights."  See 28

U.S.C. § 2680(h) (hereinafter referred to as the "misrepresentation exception").  Second, the

discretionary-function exception, bars "'[a]ny claim' based on the exercise of an official's

'discretionary function.'"  Martin, 605 U.S. at 401 (quoting § 28 U.S.C. 2680(a)).  The defendant

argues that because the plaintiff's FTCA claims "arise from alleged false statements[,]" Def.'s Mem. at 15, they cannot be pursued under the FTCA.  For the reasons stated below, the Court agrees.

Accordingly, because the plaintiff's claims are barred by the FTCA's misrepresentation exception, the Court does not reach the applicability of the discretionary-function exception.  Cf. Martin, 605 U.S. at 401(explaining that courts assess the intentional-tort exception and then turn to the discretionary-function exception to assess any remaining tort claims).

### 1.    Claims Barred by the Misrepresentation Exception of the FTCA

The defendant argues that it is immune from the plaintiff's claims for invasion of privacy (Count II), intentional infliction of emotional distress (Count IV), and negligent supervision (Count V) pursuant to the misrepresentation exception because its immunity extends not only to tort claims expressly enumerated in 28 U.S.C. § 2680(h), but also to "any claim[s] arising out of" these claims.  Def.'s Reply at 2–3.  The plaintiff urges the Court to adopt a narrower view, limiting his "misrepresentation" claim to "the common law action of deceit" and "confined . . . to the invasion of interests of a financial or commercial character[] in the course of business dealings."  Pl.'s Mem. at 23 (citing Block v. Neal, 460 U.S. 289, 296 n.5 (1983)).  Specifically, he argues that "'the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies.'"  Id. (quoting Block, 460 U.S. at 296).

The Court concludes that it need not determine whether a misrepresentation action requires that a plaintiff's alleged injury be based on reliance, because even assuming that the misrepresentation exception does not apply, the libel and slander exception in 28 U.S.C. § 2680(h) bars the plaintiff's claims.  A plaintiff "cannot circumvent the [FTCA's sovereign immunity exclusions] by the simple expedient of drafting in terms of negligence [of] a complaint

that in reality is a claim as to which the United States remains immunized." <u>Johnson v. United States</u>, 547 F.2d 688, 691–92 (D.C. Cir. 1976). Therefore, in determining whether a claim alleged in a complaint "arises out of" a claim enumerated in a statute, the court examines the actual conduct alleged. <u>See</u> <u>Kugel v. United States</u>, 947 F.2d 1504, 1507 (D.C. Cir. 1991).

The plaintiff's assertion that he "makes no defamation claim[,]" or uses "libel" or "slander" terms does not alter this analysis. Pl.'s Mem at 24. To reiterate again, "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." <u>Johnson</u>, 547 F.2d at 691 (citing <u>Aktiebolaget Bofors v. United States</u>, 194 F.2d 145 (D.C. Cir. 1951)); <u>see, e.g.</u>, <u>Gore v. Wilkie</u>, No. 19-cv-1134 (RDM), 2020 WL 2838662, at *6 (D.D.C. May 31, 2020) (emphasizing that "[w]hat matters is not 'how [a claim is] described by a plaintiff,'" but "whether the claim is 'based on dissemination of defamatory information" (quoting <u>Edmonds v. United States</u>, 436 F. Supp. 2d 28, 35 (D.D.C. 2006)); <u>James</u>, 48 F. Supp. at 64 (dismissing plaintiff's claims for false accusation and defamation as they "are in the nature of claims of libel or slander"); <u>Budik v. Dartmouth-Hitchcock Med. Ctr.</u>, 937 F. Supp. 2d 5, 15 (D.D.C. 2013), <u>aff'd</u>, No. 13-5121, 2013 WL 6222951 (D.C. Cir. Nov. 19, 2013) (dismissing intentional infliction of emotional distress and related claims as barred by libel/slander exception). Thus, "[t]o the extent that [plaintiff's] claims 'aris[e] out of' allegedly defamatory statements and conduct . . . [,] they are barred by the libel and slander exception to the FTCA." <u>Hampton v. Comey</u>, 14-cv-1607 (ABJ), 2016 WL 471277, at *5 (D.D.C. Feb. 8, 2016), <u>aff'd</u>, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016). Accordingly, the Court "must scrutinize the alleged cause of [the plaintiff's] injur[ies]" to determine whether the alleged injury was caused by allegedly defamatory statements. <u>Upshaw v. United States</u>, 669 F. Supp. 2d 32, 44–45 (D.D.C. 2009) (citing <u>Kugel</u>, 947 F.2d at 1507).

The Court concludes that Counts II, IV, and V are, in substance, libel and slander claims. Each is predicated on the assertion that Agent Leipfert "knowingly, deliberately, and corruptly" submitted affidavits and grand jury testimony containing "highly misleading, perjured, and inflammatory" statements that falsely portrayed him "as a national security threat," and that these statements were designed to "derail his career" and "disgrace him publicly."  Am. Compl. ¶¶ 1, 63, 80, 86, 89, 92.  The plaintiff expressly claims that these "false statements and material omissions were essential to the findings of probable cause," id. ¶ 80, and "substantially influenced the grand jury and contributed to its decision to indict him."  Id. ¶ 88.  Because the plaintiff's injuries flow from the content and dissemination of those alleged falsehoods, his claims—although artfully styled otherwise—fall squarely within the FTCA's libel and slander exception.  In other words, "[c]laims, no matter how they are described by a plaintiff, based on dissemination of defamatory information pertaining to a federal investigation are barred by the libel/slander exemption."  Edmonds, 436 F. Supp. 2d at 35 (citing Kugel, 947 F.2d at 1504); see, e.g., Erwin v. United States, No. 21-cv-2229 (UNA), 2021 WL 4033047 (D.D.C. Aug. 31, 2021) (dismissing claims based on officials' dissemination of unsubstantiated allegations during a State Department investigation that allegedly led to plaintiff's resignation as barred by the libel/slander exemption).  Accordingly, the Court must dismiss the plaintiff's invasion of privacy (Count II), intentional infliction of emotional distress (Count IV), and negligent supervision (Count V) claims.

**B.  Whether the Plaintiff Has Alleged Sufficient Facts to Support His Remaining Tort Claims**

Having concluded that the Court lacks jurisdiction over Counts II, IV, and V, the Court now turns to the remaining Counts I and III, which the defendant argues must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  See Def.'s Mem. at 20–42; Def.'s Reply at 6–

20.  As to the claims that now remain—Counts I and III—the United States has waived

sovereign immunity only to the extent that it would be liable as a private person "in accordance

with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  The FTCA

"is not itself a cause of action, so a motion to dismiss turns on applicable local law."  Yarullina v.

United States, 770 F. Supp. 3d 205, 213 (D.D.C. 2025) (citing Art Metal-U.S.A., Inc. v. United

States, 753 F.2d 1151, 1157 (D.C. Cir. 1985)).  Because as acknowledged by the plaintiff, all of

the acts referenced in the Amended Complaint occurred in the District of Columbia, see Am.

Compl. ¶¶ 128, 153, the plaintiff must plausibly allege facts permitting a reasonable inference

that the United States would be liable under District of Columbia law.  See Harris v. U.S. Dep't

of Veterans Affs., 776 F.3d 907, 911 (D.C. Cir. 2015) ("Tort liability under the FTCA is

determined according to the law of the place where the alleged acts or omissions occurred—in

this case, the District of Columbia.").  Applying District of Columbia law, the Court will first

assess whether the plaintiff has plausibly alleged a claim for malicious prosecution and will then

consider his abuse of process claim.

### 1.  Malicious Prosecution

To establish a malicious prosecution claim under District of Columbia law, a plaintiff

must prove the following four elements:  "(1) the defendant's initiation or procurement of a

criminal proceeding against the plaintiff; (2) absence of probable cause for the proceeding; (3)

malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of

the plaintiff."  Moore v. United States, 213 F.3d 705, 710 (D.C. Cir. 2000) (citations omitted);

Rogala v. District of Columbia, 161 F.3d 44, 57 (D.C. Cir. 1998) ("An action for malicious

criminal prosecution requires proof of the institution of a criminal action, with malice and

without probable cause, that ultimately terminates in the plaintiffs' favor.");  Blakeney v.

O'Donnell, 117 F. Supp. 3d 6, 19 (D.D.C. 2015) (same).  Therefore, the plaintiff "must prove

each of the . . . elements . . . to succeed on his FTCA malicious prosecution claim." Moore v. Hartman, 102 F. Supp. 3d 35, 101 (D.D.C. 2015).

As an initial matter, the defendant does not dispute the third element—malicious intent— and the Court therefore need not address it. See e.g., Def.'s Mem. at 22–30; Def.'s Reply at 6. The defendant does argue, however, that the plaintiff's malicious prosecution claim fails to satisfy the remaining three elements. See Def.'s Mem. at 22. Specifically, the defendant contends that: (1) "the prior judicial determination that probable cause supported the . . . warrants independent of the alleged misrepresentations in the supporting affidavits" precludes the plaintiff from "plausibly plead[ing] . . . the absence of probable cause[,]" id. at 22–24; (2) the plaintiff has "failed to plausibly plead any such connection" between Agent Leipfert's "actions" and "the initiation of criminal proceedings" against him. Id. at 24–25; and (3) "the dismissal of the indictment on grounds other than on the merits[,]" was not "a favorable termination" that would "provide a basis for a malicious prosecution claim[,]" id. at 28–30 (capitalization removed). Because the Court agrees that the plaintiff cannot sufficiently plead that there was an absence of probable cause in the prior criminal proceeding, the Court holds that the plaintiff's malicious prosecution claim does not survive the defendant's motion to dismiss. Accordingly, the Court need not address the remaining two elements of the plaintiff's malicious prosecution claim—(1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff and (2) termination of the proceeding in favor of the plaintiff.

a.    **Whether the Plaintiff Has Sufficiently Pleaded Lack of Probable Cause**

"The existence of probable cause will . . . defeat a claim for malicious prosecution[.]" Gabrou v. May Dep't Stores Co., 462 A.2d 1102, 1104 (D.C. 1983). The probable cause component of a malicious prosecution claim is based not on "whether there was probable cause

for the initial arrest, but whether there was probable cause for the 'underlying suit.'" Pitt v. District of Columbia, 491 F.3d 494, 502 (D.C. Cir. 2007) (quoting Joeckel v. Disabled Am. Veterans, 793 A.2d 1279, 1282 (D.C. 2002)).  The existence of probable cause depends "upon the honest belief of the person instituting" the legal proceedings, Ammerman v. Newman, 384 A.2d 637, 640 (D.C. 1958), and not upon a plaintiff's guilt or innocence, see Lyles v. Micenko, 468 F. Supp. 2d 68, 76 (D.D.C. 2006) (explaining that probable cause "has been said to be such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper").  In other words, "a prosecution is not considered unlawfully malicious even if it 'flow[s] from a belief that turns out to be unfounded[,] as long as it is not unreasonable.'" Smith v. United States, 121 F. Supp. 3d 112, 123 (D.D.C. 2015), aff'd, 843 F.3d 509 (D.C. Cir. 2016) (quoting Ammerman, 384 A.2d at 640).

The defendant primarily argues that the prior judicial determination that probable cause supported issuance of the search warrants is "binding on [the plaintiff] and he is barred by the doctrine of collateral estoppel from relitigating that issue again here." Def.'s Mem. at 22.  In response, the plaintiff contends that (1) consideration of "issue-preclusion is inappropriate at the pleading stage[,]" Pl.'s Mem. at 25, and (2) "[e]ven if the Court reaches issue preclusion at this stage, . . . the district court's prior finding of probable cause was not 'essential' to the judgment" and thus has no preclusive effect, id. at 27.

For issue preclusion to apply, (1) "'the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case;'" (2) "'the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case;'" and (3) "'preclusion in the second case must not work a basic unfairness to the

party bound by the first determination.'" <u>Martin v. Dep't of Justice</u>, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting <u>Yamaha Corp. of Am. v. United States</u>, 961 F.2d 245, 254 (D.C. Cir. 1992)); <u>Canonsburg Gen. Hosp. v. Burwell</u>, 807 F.3d 295, 301 (D.C. Cir. 2015) (same).

As to the plaintiff's first argument—the Court disagrees with his position. Instead, the Court agrees with decisions rendered by other judges in this district, which were affirmed by the D.C. Circuit, that have permitted parties to raise issue-preclusion arguments at the motion to dismiss stage. <u>See</u> <u>Nader v. Democratic Nat. Comm.</u>, 590 F. Supp. 2d 164, 170 (D.D.C. 2008), <u>aff'd</u>, 2009 WL 4250599 (D.C. Cir. Oct. 30, 2009) ("Res judicata is an affirmative defense that is generally pleaded in a defendant's answer, but courts have also allowed parties to assert it in a Rule 12(b)(6) motion to dismiss" (citing <u>Stanton v. District of Columbia Court of Appeals</u>, 127 F.3d 72, 76–77 (D.C. Cir. 1997))); <u>Hall v. Clinton</u>, 143 F. Supp. 2d 1, 6 (D.D.C. 2001), <u>aff'd</u>, 285 F.3d 74, 80–81 (D.C. Cir. 2002) (affirming the dismissal of the plaintiff's claim pursuant to the doctrine of issue preclusion because another court had previously dismissed charges against other defendants arising from the same disputed incidents).

Regarding the plaintiff's second argument, the Court concludes that he cannot relitigate the probable cause determination because the issue has already been decided by another member of this Court and that decision was affirmed by the D.C. Circuit.[9] <u>See</u> <u>Guertin</u>, 581 F. Supp. 3d at 90, <u>aff'd</u>, 67 F.4th at 448. In the prior proceeding, the court expressly found the existence of

_____

[9] The Court is aware of no binding precedent from this Circuit directly addressing the preclusive effect of a prior probable cause determination in the malicious prosecution context. In some contexts, courts in this Circuit have declined to give preclusive effect to probable cause findings made at preliminary hearings. <u>See, e.g.</u>, <u>United States v. Burroughs</u>, 810 F.3d 833, 839 (D.C. Cir. 2016) (noting that "it is not plain that a probable-cause determination made in a preliminary hearing binds a judge in a subsequent criminal proceeding"); <u>Barnhardt v. District of Columbia</u>, 723 F. Supp. 2d 197, 208–09 (D.D.C. 2010) (finding probable cause determination at criminal preliminary hearing did not bar relitigation in subsequent § 1983 action of the issue of probable cause for plaintiff's arrest). Here, the earlier probable cause finding in <u>Guertin</u>, however, was made "even after excising the disputed facts" on which his malicious prosecution claim is predicated. Therefore, as indicated above, the Court finds that preclusive effect attaches to the probable cause determination in the earlier case.

probable cause "even after excising the disputed facts," Def.'s Mem. at 3 (quoting Guertin, 21-cr-262 (TNM), Hr'g Tr. at 9:15–21, 12:19–13:2), concluding that the plaintiff "cannot show those facts were material" to the basis for the issuance of the warrants.  Id. at 9 (quoting Guertin, 21-cr-262 (TNM), Hr'g Tr. at 9:18–21; see Am. Compl. ¶ 111.  Pursuant to the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Yamaha Corp. of Am., 961 F.2d at 254 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

Moreover, this Court "see[s] no 'basic unfairness' that [would] result[] from preclusion of," id., the plaintiff's claim that no probable cause existed before the warrants were issued because this was precisely what the plaintiff argued in the earlier proceeding.  See Guertin, 21-cr-262 (TNM), Hr'g Tr. at 9:15–21 (finding that probable cause supported the issuance of the search warrants "even after excising the disputed facts"); Guertin, 67 F.4th at 449, 453–54 (affirming the district court's denial of Guertin's motion to suppress and request for a Franks hearing after affirming the district court's dismissal of the indictment).  In fact, the stakes of the earlier proceeding where arguably "vastly greater [in] magnitude," Yamaha Corp of Am., 961 F.2d at 254, than the instant case because the earlier proceeding was a criminal case and the plaintiff's liberty was potentially at risk.  See id. ("An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude.").  Additionally, there are no facts alleged to suggest that the "prior proceeding[] w[as] seriously defective."  See id. (citing Blonder–Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 333, ("[F]airness is implicated whenever there is risk that 'prior proceedings were seriously defective'").

Therefore, because all three of the requirements are satisfied here—i.e., (1) the plaintiff challenged whether Agent Leipfert had probable cause to procure the search warrants in his criminal case; (2) the judge in the prior case conclusively determined that there was probable cause for the issuance of the search warrants, and (3) it would not "work a basic unfairness" to reconsider the probable cause determination of another district judge that was affirmed by the D.C. Circuit—it follows that the plaintiff is now barred from relitigating the probable cause ruling.  Thus, the plaintiff cannot establish this element of his malicious prosecution claim.

Moreover, whether the plaintiff has sufficiently pleaded the other two elements required to make out his malicious prosecution claim—(1) that the defendant procured a criminal proceeding against him or (2) whether the prior proceeding terminated in his favor—is of no moment because the failure to successfully plead one essential element of the claim precludes success on the claim.  Accordingly, the Court must dismiss Count I of the Amended Complaint.

## 2. Abuse of Process Claim

Finally, the defendant argues that the Court must dismiss Count III of the Complaint, which asserts a claim of abuse of process by Agent Leipfert.  Def.'s Mem. at 34–38.  "An abuse of process claim requires a showing of two elements: first, an ulterior motive, and second, 'that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.'"  Osinubepi-Alao v. Plainview Fin. Servs., 44 F. Supp. 3d 84, 94 (D.D.C. 2014) (quoting Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980)).  In other words, an abuse of process occurs when the legal "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do."  Moore, 213 F.3d at 712 (citing Jacobson v. Thrifty Paper Boxes, Inc., 230 A.2d 710, 710 (D.C. 1967)); see Dormu v. District of Columbia, 795 F. Supp. 2d 7, 33

(D.D.C. 2011) (same). "Thus, in addition to ulterior motive, one must also allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge[,]" Hickey v. Scott, 738 F. Supp. 2d 55, 71 (D.D.C. 2010), and that "'perversion of the judicial process,' moreover, must be actually achieved[,]" Spiller v. District of Columbia, 362 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting Rockwell Capital Partners, Inc. v. CD Int'l Enters., Inc., 311 F. Supp. 3d 52, 56 (D.D.C. 2018)).

As to the first element, the defendant argues that "[the plaintiff] fails to plausibly plead that Leipfert's conduct was based on any motive other than the performance of her duties as a Special Agent assisting federal prosecutors." Def.'s Mem. at 36. As to the second element, the defendant argues that (1) the plaintiff has "failed to plead facts that could plausibly support th[e] conclusory allegation" that Agent Leipfert "misused [the judicial] 'process' to compel [him] to plead guilty to 'a crime that he did not commit[,]'" Def.'s. Reply at 18 (quoting Pl.'s Mem. at 35); (2) that the prior judicial determination of probable cause precludes finding that Agent Leipfert "lacked a 'genuine basis for believing probable cause existed," Def.'s Mem. at 37 (quoting Am. Compl. ¶ 149); and (3) that the determination that probable cause existed "despite the alleged inaccuracies in the warrant affidavits . . . [is] dispositive of an abuse of process claim[,]" id. The defendant also argues that the plaintiff "cannot base an abuse of process claim on Leipfert's testimony before the grand jury because . . . witnesses are immune from tort liability based on their testimony." Id. at 38.

Even construing the facts in the light most favorable to the plaintiff, the allegations in the Amended Complaint are not only conclusory, but also fail to state a claim for abuse of process. The plaintiff alleges that "Agent Leipfert misused the search warrant and grand jury processes by utilizing them without any genuine legal basis" in order to "carry out an ulterior motive" and "to

further her own bad-faith pursuit" of the plaintiff.  Am. Compl. ¶¶ 151–52.  He claims, for

example, that Agent Leipfert misused the legal process to "compel the United States Magistrate

Judges to issue search warrants that they could not legally and regularly have been required to

issue had Agent Leipfert refrained from making material misrepresentations and omissions

therein."  Id. ¶ 149.  But, even if true, "that alone is insufficient to state a claim for abuse of

process."  Page v. Comey, 628 F. Supp. 3d 103, 131 (D.D.C. 2022), aff'd, 137 F.4th 806 (D.C.

Cir. 2025) (citing Bown v. Hamilton, 601 A.2d 1074, 1080 (D.C. 1992)); see Dormu, 795 F.

Supp. 2d at 33 (granting summary judgment for defendants on an abuse of process claim even

though the officers lacked probable cause to arrest the plaintiff); Rauh v. Coyne, 744 F. Supp.

1186, 1194 (D.D.C. 1990) (explaining that an abuse of process claim "does not arise from a

misrepresentation to the Court").  This is so because alleging that an official acted "spitefully,

maliciously, or with an ulterior motive in instituting" the process is insufficient to plead an abuse

of process claim.  Page, 628 F. Supp. 3d at 131 (D.D.C. 2022) (finding allegation insufficient

that "that the Government's agents perverted the [Foreign Intelligence Surveillance Act] warrant

process by making material misstatements and omissions to obtain four successive warrants

without probable cause for the ulterior motive of surveilling" to state abuse of process claim).

Instead, the process must be used "for an immediate purpose other than that for which it was

designed and intended."  Id.

"[T]he gist of [an abuse of process] action lies in the improper use after issuance" of the

process.  Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C. 1959).  The plaintiff's

complaint does not allege that the defendant used the search warrant process wrongfully "to

accomplish some end which the process was not intended by law to accomplish," Hall v. Field

Enters., Inc., 94 A.2d 479, 481 (D.C. 1953).  Rather, what he contends is that the defendant used

the process precisely for the "purpose for which it was intended"—namely, the "procurement of [his] subsequent prosecution[.]"  Houlahan v. World Wide Ass'n of Specialty Programs and Schools, 677 F. Supp. 2d 195, 200 (D.D.C. 2010); Am. Compl. ¶ 109.  "There is no action for abuse of process when the process is used for which it is intended, . . . [t]hus, the entirely justified prosecution of another on a criminal charge[] does not become abuse of process merely because the instigator dislikes the accused[.]"  Scott, 101 F.3d at 755 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)).  Rather, abuse of process arises when the process is used "to put pressure upon the other to compel him to . . . take some other action or refrain from it."  Id. at 755–56.  Here, the plaintiff does allege that the defendant sought a "collateral thing which [the plaintiff] could not legally and regularly be required to do," id. at 755 (citing Bown, 601 A.2d at 1079), but rather that Agent Leipfert used the warrants to "compel [him] to plead guilty to criminal charges that Agent Leipfert knew there was no probable cause to sustain."  Am. Compl. ¶ 152.  Thus, even accepting this allegation as true, the Complaint describes use of the legal process for its intended purpose:  to establish that the plaintiff was guilty of a criminal offense.

To the extent that the plaintiff relies on the absence of probable cause to sustain his abuse of process claim, this Court, like other courts in this district, is "hesitant to find any relationship between the existence of probable cause and a claim of abuse of process[,]" Dormu, 795 F. Supp. 2d at 33 (rejecting abuse of process claim predicated on lack of probable cause); Bown, 601 A.2d at 1079 n.14 (suggesting claims asserting lack of probable cause are better suited to malicious prosecution); Whelan v. Abell, 953 F.2d 663, 670 (D.C. Cir. 1992) (observing that only tort of malicious prosecution—not abuse of process—requires a showing of lack of probable cause),

and therefore declines to do so.  Accordingly, the Court concludes that Count III fails to state a claim for abuse of process.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss the plaintiff's Amended Complaint.

**SO ORDERED** this 28th day of November, 2025.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.